F.L., individually and on behalf of R.C.L. v. The Bd. of Educ. of the Great Neck Union Free Sch. Dist.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**


At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 24th day of August, two thousand eighteen.

Present:     JON O. NEWMAN,
             ROSEMARY S. POOLER,
                       *Circuit Judges*.
             DENISE COTE,[1]
                       *District Judge*.

_____

F.L., INDIVIDUALLY AND ON BEHALF OF R.C.L.,

                    *Plaintiff-Appellant*,

            v.                                          17-2881

THE BOARD OF EDUCATION OF THE GREAT NECK
UNION FREE SCHOOL DISTRICT,

                    *Defendant-Appellee*.[2]

_____

Appearing for Appellant:     Gary S. Mayerson, Mayerson & Associates, New York, N.Y.

Appearing for Appellee:      Laura A. Ferrugiari, Frazer & Feldman, LLP, Garden City, N.Y.

_____

[1] Judge Denise Cote, United States District Court for the Southern District of New York, sitting by designation.

[2] The Clerk of the Court is directed to amend the caption as above.

Appeal from the United States District Court for the Eastern District of New York (Feuerstein, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Appellant F.L., individually and on behalf of R.C.L. (the "father"), appeals from the August 15, 2017 opinion and the August 21, 2017 judgment of the United States District Court for the Eastern District of New York (Feuerstein, *J.*), granting summary judgment for the Board of Education of the Great Neck Union Free School District (the "District") and denying summary judgment for the father. The father argues here, as he did below, that the Individualized Education Plan ("IEP") developed by the District over the course of three consecutive academic years denied R.C.L. a free and appropriate public education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. Specifically, the father argues that R.C.L. was denied a FAPE when the District denied Extended School Year ("ESY") services to R.C.L. over the summer and failed to provide him with the specific private reading services—Lindamood Bell ("LMB")—requested by the father. The Impartial Hearing Officer ("IHO") agreed with the father and ordered compensatory services and reimbursement to the father, but the State Review Officer ("SRO") disagreed and reversed the decision of the IHO, with an exception not relevant here. The father appealed to the district court, which affirmed the SRO and granted summary judgment for the school district. We assume the parties' familiarity with the remaining underlying facts, procedural history, and specification of issues for review.

Our traditional de novo review of summary judgment is modified in the context of administrative agency decisions under IDEA. We have described our review as a "circumscribed *de novo* review . . . because the responsibility for determining whether a challenged IEP will provide a child with a FAPE rests in the first instance with administrative hearing and review officers." *A.M. v. N.Y.C. Dep't of Educ.*, 845 F.3d 523, 534 (2d Cir. 2017) (internal quotation marks omitted). When the IHO and SRO disagree, a reviewing court should "defer to the final decision of the state authorities, that is, the SRO's decision. In the ordinary case, it is not for the federal court to choose between the views of conflicting experts on such questions." *Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372, 386 (2d Cir. 2014) (internal citation and punctuation omitted). We "must defer to the SRO's decision on matters requiring educational expertise" unless we determine that the SRO's decision was "inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012).

In this appeal, the father seeks both reimbursement for private reading tutoring that he paid for R.C.L. to obtain in 2014, as well as a prospective award of compensatory education in reading and math. Reimbursement claims are assessed using the three-step *Burlington/Carter* test: parents are "entitled to reimbursement if (1) the school district's proposed placement violated the IDEA, (2) the parents' alternative private placement is appropriate to meet the child's needs, and (3) equitable considerations favor reimbursement." *E.M. v. N.Y.C. Dep't of Educ.*, 758 F.3d 442, 451 (2d Cir. 2014). Courts assessing claims for compensatory education review whether violations of the IDEA denied the child a FAPE, effectively the same analysis as the first prong of *Burlington/Carter*. *See Mr. P. v. W. Hartford Bd. of Educ.*, 885 F.3d 735, 748,

2

756-57 (2d Cir. 2018). Our analysis begins, therefore, by determining whether the school district complied with the IDEA and provided R.C.L. a FAPE for the 2012-2013, 2013-2014, and 2014-2015 school years.

> In determining whether an IEP complies with the IDEA, courts make a two-part inquiry that is, first, procedural, and second, substantive. At the first step, courts examine whether there were procedural violations of the IDEA, namely, whether the state has complied with the procedures set forth in the IDEA. Courts then examine whether the IEP was substantively adequate, namely, whether it was reasonably calculated to enable the child to receive educational benefits.

*R.E.*, 694 F.3d at 189-90 (internal citations and punctuation omitted).

We first determine that there were no procedural violations that would have denied a FAPE to R.C.L. The SRO observed that the Committee on Special Education ("CSE") convened "no fewer than eight times" between the 2012-13 and 2014-15 school years and that "[n]o fewer than 10 persons attended each meeting." App'x at 74. The SRO further observed that on the basis of "a thorough review of both the audio recordings and over 500 pages of transcripts of those recorded CSE meetings, as well as the minutes of the CSE meetings" it was clear that "while the CSEs did not accede to every request made by the parent, the parents and the accompanying attorney(s) were provided with ample opportunity to discuss the student, provide input into the student's present levels of performance and annual goals, and contribute to the development of his IEPs." App'x at 110. The IHO's contrary determination that there were procedural violations rested primarily on the IHO's determination that "the CSE team consistently disregarded the father's concerns" despite the fact that "parent's concerns were more than valid." App'x at 63. This observation does not provide a basis for a procedural violation. As one district court has explained it, "[a] professional disagreement is not an IDEA violation." *P.K. ex rel. P.K. v. Bedford Cent. Sch. Dist.*, 569 F.Supp.2d 371, 383 (S.D.N.Y. 2008). There is no basis to find that the District engaged in the kind of "persistent refusal" to discuss the father's concerns such that the refusal could constitute "a procedural denial of a FAPE." *T.K. v. N.Y.C. Dep't of Educ.*, 810 F.3d 869, 877 (2d Cir. 2016). Instead, the record evidence is that the District listened to father's concerns, but disagreed with his recommendations. As noted, these disagreements do not constitute a procedural denial of a student's FAPE.

We next turn to the substantive adequacy of R.C.L.'s IEPs and defer to the SRO's well-reasoned opinion that R.C.L. was provided a FAPE for each of the relevant school years. After a searching review of each CSE meeting and IEP, the SRO determined that each IEP presented a description of R.C.L.'s strengths, challenges, and goals that was consistent with the information before the CSE at each of the meetings shaping the various IEPs.The SRO also acknowledged modifications made to the IEPs in response to changes in R.C.L.'s evaluations or requests from the parents. Accordingly, the SRO determined that R.C.L.'s IEPs were "reasonably calculated to provide some meaningful benefit to the student." App'x at 118.

The father argues there is objective evidence that R.C.L. did not receive a FAPE because goals that were repeated between IEPs and R.C.L.'s poor performance on standardized tests (and evidence of regression in the standardized testing conducted by his private evaluator) indicate

that he was not in fact progressing, but was instead either stagnating or regressing. The SRO examined these issues and determined that the weight of the evidence demonstrated that R.C.L. was progressing, even if not at a pace that his father would have preferred. We agree that the preponderance of the evidence supports the view that R.C.L. made steady progress each year and that his IEPs were individually tailored to his unique mix of strengths and deficits.

We also observe that the Supreme Court's recent clarification of the FAPE standard buttresses our view that the preeminent requirement of IDEA is that the District individually tailor a program that is sufficiently challenging for the unique needs of each child. IDEA "requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist.*, 137 S.Ct. 988, 1001 (2017). That educational program need not include "grade-level advancement" if that kind of progress is not "a reasonable prospect" for the particular child. *Id.* at 1000. "But his educational program must be appropriately ambitious in light of his circumstances, just as advancement from grade to grade is appropriately ambitious for most children in the regular classroom. The goals may differ, but every child should have the chance to meet challenging objectives."[3] *Id.*

Because we defer to the SRO's decision on prong one of the *Burlington/Carter* test, we do not need to address the remaining two prongs.

We have considered the remainder of the father's arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[3] This Court recently observed that "[p]rior decisions of this Court are consistent with the Supreme Court's decision in *Endrew F.*" *Mr. P. v. W. Hartford Bd. of Educ.*, 885 F.3d 735, 757 (2d Cir. 2018).